421 So.2d 1144 (1982)
Sam GARNER and Gretchen Garner, Plaintiffs-Appellants,
v.
Alice Bowes WADDILL, et al., Defendants-Appellees.
No. 15001.
Court of Appeal of Louisiana, Second Circuit.
October 25, 1982.
*1145 Sedric E. Banks, Monroe, for plaintiffs-appellants.
Pipes & Pipes by Richard H. Pipes, Monroe, J. Carl Parkerson, Dist. Atty., Monroe, for defendants-appellees.
Before PRICE, FRED W. JONES and SEXTON, JJ.
PRICE, Judge.
This is an action to have a road declared to be public pursuant to LSA-R.S. 48:491. Plaintiffs, Sam and Gretchen Garner, seek to have a passageway located in Ouachita Parish declared to be a public road. The named defendants are Alice Bowes Waddill, Adele Waddill Ransom and Elizabeth Waddill Russell, owners of the tract of land surrounding the road and the Ouachita Parish Police Jury. From a judgment in favor of defendants, plaintiffs appeal. We affirm the judgment of the trial court.
We adopt the following findings of fact of the trial court:
"Plaintiffs live at the end of a passageway leading to their residence from `Old Horseshoe Lake Road,' a gravel road which is part of the Ouachita Parish system. They brought this action against the owners of the surrounding property and the Police Jury, seeking to have the passage[1] declared a public road pursuant to R.S. 48:491. The Police Jury answered, disclaiming any interest in the outcome of the suit, that is, asserting no factual allegations, seeking no relief and putting the principal contenders on strict proof.
The whole property is a large tract formerly owned by W.J. Riley, lying between the Ouachita River on the west and the *1146 parish gravel road at the base of the levee on the east, with Horseshoe Lake on the south side. Many years ago, Mr. Riley built a camp less than a half mile west of the gravel road, and the disputed passage apparently originated as the roadway to the camp and through the fields toward the river. The tract was bought in 1956 by Dr. Waddill, husband and father of the individual defendants.
The Waddills lived in the camp house until the doctor's death in 1963, and Mrs. Waddill remained there for a short time thereafter. Since the early 1950's, Paul Ransom[2] has leased and conducted farming and cattle operations on the whole tract. At one time there was at least one residence near a barn on the road, with a smaller house near the camp house. A number of the witnesses resided in one or another of those residences at pertinent times, although the house near the barn no longer exists.
On May 10, 1976, the Waddills sold a 2.35 acre tract around the camp house and small `tenant' house to plaintiffs. The deed confers upon plaintiffs `the Right of Ingress and Egress over a Dirt Road across Mrs. Alice B. Waddill's property' but the sellers reserved `the right to relocate the route of ingress and egress above described.' Plaintiffs have since resided in the camp house.
The road as it presently exists leaves Old Horseshoe Lake Road at a `gate' between two tall pillars some 10 to 12 feet apart. This is the relic of an archway and metal and wire gate presumably constructed as the entrance to his camp by Mr. Riley. Leaving the gravel road, a driver would pass through the gate in a general westerly direction and move along the passage somewhat less than a half mile along the edge of Horseshoe Lake on the left to a point near the barn still in existence. There the road continues generally west into the fields toward the river on one `leg' and turns nearly 90 degrees to the north on another `leg' to the camp house. It has no horizontal ditches on either side, varies in width from 8 to 12 feet according to estimates, and is generally level with ground on both sides."
At trial, numerous witnesses testified on behalf of the parties.
Testifying for plaintiffs was Mr. J.T. Lowery, a former Ouachita Parish Highway Department employee and motor grader operator. Mr. Lowery stated that the parish began regular maintenance of the road in the late fifties or early sixties when a parish employee moved onto the property and at the request of Dr. Waddill, although it had been graded before when Riley had owned the property. Lowery stated that he bladed the road and had applied four to six inches of pit gravel on the entire length of the road on two different occasions sometime approximately in the late sixties. Lowery stated he would request the gravel from either the engineer or the police juror, Mr. Wilhite. Lowery testified he had a regular schedule of maintenance and his rounds, including Sam Garner Road, would take about two to three weeks. Lowery testified that the road had been maintained regularly for fifteen or twenty years. Lowery stated he would grade the road upon the request of the school bus driver, Mrs. Margie Stewart.
Plaintiff, Sam R. Garner, testified that he had lived along the Sam Garner Road since May 5, 1976. Garner stated the road had been regularly maintained by the Ouachita Parish Police Jury since 1976 and he had seen parish equipment working on the road. Garner testified he had only witnessed blading work with a grader but no gravel applications by the parish. Garner stated that the owners of the property had never performed personal maintenance on the road.
Mr. John W. Wilhite, a former Ouachita Parish Police Jury member, testified on behalf of the plaintiffs. Wilhite stated that the Sam Garner Road had been regularly maintained by the police jury and that he had personally instructed Lowery to blade the road "more than once." Wilhite stated that although he could not testify as to seeing the parish crew actually working on the road, when he checked the road the blading had been done as he had instructed.
*1147 Also testifying for plaintiffs was Mrs. Margie Stewart, a school bus driver. Mrs. Stewart testified that for approximately twelve years she traveled the Sam Garner Road as a part of her school bus route when children were living on the property. Stewart stated that when the road needed maintenance, she would contact Lowery and the work would be done, although she never actually saw Lowery performing the work.
Mr. A.B. Spence, a director of public works with the Ouachita Parish Police Jury, testified on behalf of plaintiffs. Spence stated a computer was installed about 1976 and the police jury records reflected maintenance work on the Sam Garner Road from March 1977 to April 1979. The records indicated the following maintenance:
BladingMarch 1977
BladingMarch 24, 1977
BladingJuly 25, 1977
BladingFebruary 16, 1978
BladingMarch 10, 1978
BladingMarch 17, 1978
BladingApril 3, 1978
BladingApril 19, 1978
BladingMay 1, 1978
BladingMay 16, 1978
BladingJune 9, 1978
MowingJune 19, 1978
BladingJune 22, 1978
BladingAugust 16, 1978
BladingAugust 22, 1978
BladingAugust 29, 1978
BladingMarch 2, 1979
BladingMarch 14, 1979
BladingApril 5, 1979
Spence testified the records were compiled from daily work reports turned in by the particular operators and a supervisor checks the operator's work on the following day. Spence stated he personally observed the road around April 5, 1979 and it was not in good condition and did not appear to have been bladed. Spence testified a road sign had been placed on Sam Garner Road for approximately two days until its removal pursuant to Mr. Ransom's request.
Gary Heath lived by the Sam Garner Road in 1980-81. Heath testified he had seen work being performed on the road about three or four times but could not identify the equipment or the operator.
Mr. Fred McMullen, an administrative aide with the police jury, testified on behalf of the plaintiffs. McMullen stated that the police jury had bladed the road for twelve or thirteen years, although he had only been present to observe the grading five or six times during that period.
Mrs. Alice Bowes Waddill, a defendant, testified she lived on the property from 1957 until 1964 and that the Sam Garner Road was used for farming purposes. Waddill stated she had no knowledge of parish gravel being furnished on the road nor had she requested parish maintenance of any kind. Waddill stated she had never seen maintenance being performed on the property.
Adele Waddill Ransom, a defendant and wife of Paul Ransom, testified she normally traveled the road every other day beginning in 1957 to visit her father until her father's death in 1961 and visited with her mother quite often on the property until the end of 1963. Ransom stated she had never seen parish equipment on the road nor had any recollection of gravel applications to the passageway. Waddill stated her husband and Erwin Miller, a motor grader operator, had performed maintenance work on the property. Waddill testified that she had never been contacted by the police jury about working on the road.
Mr. George Gregory testified on behalf of the defendants and had traveled the road fairly frequently from 1973. Gregory stated that he had never seen public maintenance being done on the road and had personally maintained the road along with Ronald and Gerald Reeves. Gregory testified that the road did not appear to have been maintained at all.
Lacie Tolston, an employee of Paul Ransom, testified that he lived on the property in 1956 and 1957 and was frequently on the road from 1956 to present. During this time, Tolston testified he had never seen parish equipment on the road and that the *1148 road had been maintained by grading approximately four or five times a month by he and Mr. Ransom. Mr. Tolston stated he did not recall any gravel on the road.
Ronald Reeves, an employee of Paul Ransom, testifying on behalf of defendants, stated he first became familiar with the road in 1959 upon moving onto the Ransom property and that he had lived in that general area for the last twenty-two years. Reeves testified he was on the property frequently since 1959 and had never seen any parish equipment nor gravel applications on the roadway, only personal maintenance.
Mr. Gerald Reeves, testifying on behalf of defendants, stated he lived on the property from 1963 to 1974 and was on the road three or four times a day during that period. Reeves testified he had seen the parish perform work on the road once while he was living there and had observed a parish operator on the property on another occasion but he was not doing any work at that time. Mr. Reeves stated he had personally maintained the road often along with maintenance conducted by Erwin Miller and the gas company.
Mr. Vincent Jabbia, an employee of Tennessee Gas Pipeline Company, testified on behalf of the defendants. Mr. Jabbia stated he was first on the property in 1966 and is on the property about six to eight times a year supervising pipelines. Jabbia stated his company had placed some pit gravel on the road in 1974 to repair damage caused by the gas company. Jabbia testified he had never seen parish personnel working on the road nor other applications of gravel.
Mr. Erwin Miller, a heavy equipment operator, testified on behalf of the defendants. Mr. Miller stated he was first on the road in the early fifties to do work for Dr. Waddill. Miller stated he worked on the road an average of two to four times a year and had never seen any parish equipment or personnel. He testified that when he worked the road, there was no indication of other maintenance by a heavy grader nor any general application of gravel other than to fill pot holes.
Mr. Paul Ransom testified that he has farmed the property since 1953 and the road is used for farming purposes. Ransom stated he is on the property quite frequently and that the road is primarily maintained with farm equipment. Ransom testified there had been no gravel applied by the parish on the entire length of the road. Ransom stated although he had seen Lowery on the property, he had never seen Lowery performing work on the road. Ransom further testified that he had never seen parish equipment or personnel on the road during the period of 1977 through 1979. Mr. Ransom stated that when he observed a parish highway sign on the road, he immediately contacted the police jury and requested that it be removed.
The evidence established that the property was clearly posted as private and that the general public did not travel the road.
In his written reasons for judgment, the trial judge reviewed the testimony of all the witnesses. The court noted that plaintiffs had to rely primarily on the parish records and testimony of the parish grader operator to establish public maintenance under the statute as the testimony of the other witnesses was based upon their assumption that the parish was maintaining the road. The court further noted that many of the witnesses for the defense had employment or family connections to the defendants and these interests should be taken into account in assessing the weight and credibility of their testimony. However, the court stated that even if such factors were given the maximum emphasis, the defense evidence and testimony of the parish operator would remain irreconcilable. The court found that the testimony of the witnesses did not support the degree of maintenance described by the operator and computer records. The court concluded that while it was more probable than not that an occasional blading or smoothing of holes may have been performed by parish equipment and personnel, there had never been regular and frequent maintenance as required by the statute. Further, plaintiffs failed to prove that the defendants had *1149 acquiesced to or had necessary knowledge of any such parish work as required under Vaughn v. Williams, 345 So.2d 1195 (La. App.2d Cir.1977), writ denied 350 So.2d 896.
On appeal, the following issues are before this court:
(1) whether the trial court erred in not finding dedication in accordance with LSA-R.S. 48:491 or necessary knowledge of or acquiescence in parish work by the defendants;
(2) whether the trial court erred in its assessment and consideration of the testimony of the witnesses; and
(3) whether the trial court erred in its interpretation and application of Vaughn, supra, to the facts of the instant case.
LSA-R.S. 48:491 provides in pertinent part:
B. All roads or streets in this state which have been or hereafter are kept up, maintained, or worked for a period of three years by authority of a parish governing authority within its parish, or by authority of a municipal governing authority within its municipality, shall be public roads or streets, as the case may be, unless in the parish of Vermillion only such maintenance operations are conducted by authority of a parish or municipal governing authority pursuant to a written contract with the landowner which specifies that a private road or street shall not become a public road or street.
Plaintiffs contend that the Sam Garner Road was tacitly dedicated to the public as required under the statute.
It is well settled that an "... occasional `brushing up' or token maintenance does not establish a tacit dedication. Jackson v. Town of Logansport, 322 So.2d 281 (La. App.2d Cir.1975) and authorities cited therein." Vaughn, supra, at p. 1198. See also Boynton v. Bertrand, 309 So.2d 769 (La.App.3d Cir.1975); Rowe v. Harvey, 307 So.2d 103 (La.App. 1st Cir.1974), writ denied 310 So.2d 642; Chargois v. St. Julien, 280 So.2d 847 (La.App. 3d Cir.1973).
Although "[t]acit dedication does not result where active opposition is directly communicated by the landowner to the governing body ... protests not made directly to the governing body or made after the road has been maintained by the governing body for three years do not prevent a tacit dedication under the statute." Vaughn, supra, at p. 1198, and numerous citations therein.
The requisite maintenance for tacit dedication is not ascertained by comparison to the degree of maintenance of similar roads in a particular ward but rather an examination of the degree of maintenance conducted on the particular road in dispute. The standard of requisite maintenance is uniform, rather than ward by ward.
Upon a review of the record in the instant case, this court finds that the evidence supports the finding of the trial court that the road had not been tacitly dedicated and the judgment of the trial court is not clearly wrong.
Plaintiffs' witnesses, Stewart and Wilhite, had never actually seen parish personnel or equipment working on the road but merely assumed that the parish was maintaining the road. Gary Heath had seen maintenance work conducted on the road several times but could not identify the equipment or operator and McMullen had only actually observed grading by the parish five or six times. The testimony of the witnesses as to the condition of the road simply does not support the degree of maintenance indicated by the computer records or the testimony of the parish grader operator, Lowery.
The testimony of defendants' witnesses revealed that considerable private maintenance was performed on the road. Further, only one of the defendants' witnesses, Ronald Reeves, had actually seen the parish maintaining the road even though the road was frequently traveled by these witnesses. The owners were not aware of any public maintenance over the years. In fact, when the parish placed a sign on the road, Ransom immediately contacted the police jury to have it removed.
We agree with the trial court that it is probable that the parish did occasional *1150 maintenance on the road but not to the degree or duration necessary for tacit dedication.
Plaintiffs argue that the trial court erred in its assessment and consideration of the testimony of Mr. Lowery as "mistaken or confused" and of the defendants' witnesses' testimony because of possible bias.
In his reasons for judgment the trial judge noted that the evidence amply supported the conclusion that the road had never been covered with gravel on two occasions as claimed by Lowery. Therefore, the court concluded that the grader operator was simply mistaken about the gravel applications either because Lowery's memory was erroneous or because he had confused the disputed road with others in the vicinity. Also in reviewing the evidence, the trial judge noted the possibility of bias of several of the defendants' witnesses.
The standard of review for this court is clear. The factual conclusions and assessment of credibility by the trier of fact are entitled to great weight. Further, where the testimony is conflicting "... reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable." Schiro v. Viola, 408 So.2d 408 (La.App. 1st Cir.1981), at p. 411. See also Rahm v. Exxon Corporation, 399 So.2d 676 (La.App. 1st Cir.1981) and Graff v. Graff, 407 So.2d 70 (La.App. 4th Cir.1981).
The record fully supports the decision of the trial court. The testimony of Mr. Lowery as to the maintenance of the road until his retirement in 1977 conflicts with the testimony of the defense witnesses, the majority of which never observed parish equipment or personnel maintaining the road. Further, the evidence as to the condition of the road is irreconcilable with Lowery's testimony.
A number of the defendants' witnesses had employment or family ties with the defendant which the court considered in weighing the evidence. However, defendants were necessarily restricted in possible witnesses as the road was generally closed to the public and most of these witnesses had either worked or lived in that area.
Plaintiffs argue that the trial court erred in its interpretation and application of Vaughn, supra. The plaintiffs contend the trial court seemed to hold that in order for LSA-R.S. 48:491 to apply, the plaintiffs must prove the landowner knew or acquiesced in the maintenance. Therefore, plaintiffs theorize that if such is a required element of proof then the landowner could effectively avoid application of the statute by simply a denial of knowledge of public maintenance. This argument is without merit.
In his written reasons for judgment, the trial judge noted that in order to save LSA-R.S. 48:491 from constitutional attack as a "taking" without due process and compensation, there must be evidence of intelligent acquiescence or knowledgeable in action on the part of the landowner. The court concluded that plaintiffs failed to prove sufficient maintenance as well as necessary knowledge of or acquiescence in any parish work by the defendants.
It is necessary that some type of knowledge or acquiescence requirement be read into the statute in order to protect the property rights of a landowner. Otherwise the parish could maintain a private road for three years, despite a landowner's protests, so that it would become tacitly dedicated to the public.
The statute could not be thwarted simply by a landowner's denial of knowledge of public maintenance. Rather, one would have to examine the totality of the evidence to ascertain whether there was sufficient maintenance and whether the landowner had knowledge of or acquiesced in such maintenance.
LSA-R.S. 48:491 sets forth a two-pronged burden of proof in order for a road to be deemed tacitly dedicated. First, it must be shown there has been sufficient maintenance. Secondly, it must be shown that the landowner had knowledge of or acquiesced in the public maintenance.
*1151 In the instant case, plaintiffs failed to prove that there had been the degree of maintenance by the parish necessary under the statute. Because plaintiffs failed to meet this burden of proof, the issue of whether defendants had knowledge of or acquiesced in any public maintenance is irrelevant.
For these reasons, the judgment of the trial court is AFFIRMED at appellants' costs.
NOTES
[1] Referred to by some witnesses as the "Riley Camp Road," by others as the "Sam Garner Road." and by some as merely the "farm road."
[2] The husband of Adele Waddill Ransom, one of the individual defendants.