LABORDE, Judge.
Plaintiff, Jefferson Davis Parish School Board and Jefferson Davis Parish Police Jury, (hereinafter Police Jury) sued to enjoin defendants, Charles and Wanda Fonte-not, from obstructing an alleged public gravel road, driveway, and turnaround located on the defendant’s property. After trial, the district court held the road and turnaround extending from parish road 9-41C to be tacitly dedicated as a public road under LSA-R.S. 48:491. From a judgment declaring the road and turnaround to be public and enjoining the defendants from interfering with the use of the road, defendants appeal. We affirm.
On appeal, defendants cite three assignments of error as follows:
“(1) The trial court was manifestly er-ronious [sic] in failing to grant the defendant a directed verdict on the trial of the permanent injunction when the plaintiff failed to produce any evidence nor obtain a binding stipulation as to any evidence.
(2) The trial court was manifestly erro-nious [sic] as a matter of law in failing to follow jurisprudential requirements that plaintiff had the burden of proving the intent of the defendant to dedicate his land to the public.
(3) The trial court was manifestly erro-nious [sic] in concluding there was sufficient evidence to establish the Police Jury had maintained the defendant’s property for an excess of three (3) years.”
FACTS
Charles Fontenot purchased an unimproved tract of land in Jefferson Davis Parish in 1972. Shortly after purchasing the property, Fontenot, with the assistance of Frank Goos, built a gravel road, a driveway, and a turnaround. The gravel road was an extension of what is referred to as parish road 9-41C. The gravel road ex *957 tended off of the parish road in a westerly direction until eventually reaching the driveway. The driveway was built at a 90 degree angle traversing in a northerly direction. Upon entering the driveway, which extended for approximately 320 feet, a turnaround extended to the west circling in front of the Fontenot’s residence eventually connecting again to the driveway.
The defendant testified that around the time when the gravel road and turnaround were being built, one of the neighbors requested that a school bus be allowed to use the gravel road, driveway and turnaround. At the time, the defendant had young children who rode the bus to school. Upon receiving the permission and consent of the defendants, the school bus used the road and the turnaround for some eight to ten years up until October of 1984, when defendants prohibited any further use by the school bus. The defendants testified that the reason for not allowing the school bus to turn around was because the use of the turnaround was causing a problem with cars being parked in the driveway.
On March 27, 1985, the plaintiffs filed a “Petition for Writ of Injunction” seeking a preliminary injunction to prevent the defendants from obstructing the turnaround located at the end of parish road 9-41C, Topsy, Louisiana. The petition for injunction alleged that the defendant obstructed the turnaround without the consent of the plaintiffs thereby preventing the public from using the road. The petition further alleged that the plaintiffs had acquired the property or servitude by tacit dedication. The preliminary injunction was heard on July 2, 1985. Included at the hearing on the preliminary injunction was an exception of no cause of action, together with an exception of prematurity and vagueness filed by the defendants. The trial court overruled the above exceptions. After the plaintiffs put on all of their evidence, the defendants moved for a directed verdict. The trial court, in deciding that there would be no irreparable harm, granted the directed verdict.
On November 21, 1985, the hearing on the suit for permanent injunction was set for trial. There was some dispute as to whether the evidence taken at the preliminary injunction would be made part of the record for the trial on the permanent injunction. The trial court concluded that it would not be necessary for the plaintiff to put on the same evidence which had previously been taken at the preliminary hearing. The plaintiffs did not introduce any additional evidence, but relied on the evidence taken at the hearing on the preliminary injunction. After hearing all of the defendants’ evidence, the court with written reasons held:
“[t]he preponderance of the evidence establishes that the road and turnaround was worked and maintained by equipment, employees and materials furnished by the Jefferson Davis Parish Police Jury for a period in excess of three years from 1973 up until October, 1984. The preponderance of the evidence is that the operations by the Police Jury were more than ‘brushing up’ or token maintenance. The evidence also establishes that no protest against the maintenance or public use of the road by the Fonte-nots occurred until October of 1984, a period in excess of three years. Therefore, the court concludes that the road and turnaround have become a public road in accordance with LSA-R.S. 48:491, and plaintiffs are entitled to the injunc-tive relief sought in this suit.”
In the first assignment of error, the defendants contend that the court was manifestly erroneous in allowing any evidence from the hearing on the preliminary injunction to be admitted at trial for the permanent injunction without a binding agreement or stipulation allowing such evidence.
After reviewing the record, we agree with the trial judge in reasons for judgment in which he stated:
“It was the court’s understanding that it would not be necessary for plaintiff to call the same witnesses at the hearing on the permanent injunction and that counsel for defendant would stipulate as to the introduction of this testimony. The following portions of the record support *958 the conclusion that counsel for defendant did agree to stipulate to all of the testimony that had been previously taken:
‘MR. WALL:
Your Honor, if the defendant wants us to come back to court and go through all the same testimony—
MR. McHALE:
Oh, no. I didn’t say that we were going to do that. I think that’s something that you and I can discuss. I’d stipulate to all the testimony you put on....
MR. McHALE:
And we will — if it goes any further, I’m willing to stipulate, back on the matter, if we can’t work something out, I’m willing to stipulate to all the testimony we put in. I don’t see a need to go back to Court again....’”
It is obvious that the above discussion between counsel, the last discussion with regards to the stipulation of evidence, was an agreement to stipulate to all of the evidence put on at the hearing on the preliminary injunction. This assignment of error lacks merit.
In the second assignment of error, defendants contend that the trial court was manifestly erroneous by not following the jurisprudential requirement that the plaintiff prove the intent of the landowner to dedicate his property to the public. Defendants rely on Garner v. Waddill, 421 So.2d 1144 (La.App. 2d Cir.1982) and Chargois v. St. Julien, 280 So.2d 847 (La.App. 3d Cir.1973). In Garner, 421 So.2d at 1150, the court states that:
“LSA-R.S. 48:491 sets forth a two-pronged burden of proof in order for a road to be deemed tacitly dedicated. First, it must be shown there has been sufficient maintenance. Secondly, it must be shown that the landowner had knowledge of or acquiesced in the public maintenance.”
In reasons for judgment the trial judge states:
“The court finds that the jurisprudence does not require a showing that the landowner intended to make the passageway a public thoroughfare before there can be a finding of a statutory tacit dedication. Although Garner v. Waddill, supra, says that the statute sets forth a two-prong burden of proof this holding is contrary to this same court’s opinion in Vaughn v. Williams, 345 So.2d 1195 (La.App. 2 Cir.1977) wherein the court discusses the two categories of dedications established in the jurisprudence, namely, implied dedication (non-statutory in nature) and tacit dedication (statutory— LSA R.S. 48:491). Implied dedication requires both the landowner’s intent to create a public road and the public’s acceptance of the landowner’s office, [sic] whereas tacit dedication is founded upon the statute and its existence is determined by an application of the statutory language. The landowner is held to have impliedly or tacitly given his consent to the establishment of a public road by accepting the benefits of public maintenance for the required period of time without making his opposition known to the public body. This is also the holding of the Third Circuit in Mouton v. Bourque, 253 So.2d 689 (La.App. 3 Cir.1971). The constitutional argument is also answered by the court [in] Vaughn, supra, where the court pointed out that it is a giving by the landowner rather than a taking by the public authority and as thus interpreted does not amount to a taking of private property without due process of law, or without payment of just and adequate compensation and is specifically supported by Article VI, Sec. 24, of the Louisiana Constitution of 1974 which provides for the acquisition of ser-vitudes by prescription in the manner prescribed by law.”
After reviewing the jurisprudence cited by the plaintiffs and defendants, it is apparent that tacit dedication of public road does not require intent of the landowner to dedicate property where there has been sufficient maintenance by the parish without protest. Smith v. Mahfouz, 489 So.2d 409 (La.App. 3d Cir.1986). If such were the case, tacit dedication could be thwarted simply by the denial of knowledge of public maintenance. Gamer, 421 *959 So.2d at 1150. This assignment of error lacks merit.
In the third assignment of error, the defendant contends that there was not sufficient evidence to establish that the Police Jury had maintained the road and turnaround for a period in excess of three years.
The decision of whether a road is public or private is a question of fact. Whether a public body has maintained a road so as to amount to tacit dedication is a question of degree. Sylvester v. St. Landry Parish Police, 461 So.2d 534 (La.App. 3d Cir.1984).
In Gamer v. Waddill, 421 So.2d 1144 (La.App.2d Cir.1982), the court stated:
“LSA-R.S. 48:491 provides in pertinent part:
‘B. All roads or streets in this state which have been or hereafter are kept up, maintained, or worked for a period of three years by authority of a parish governing authority within its parish, or by authority of a municipal governing authority within its municipality, shall be public roads or streets, as the case may be.’
[[Image here]]
It is well settled that an ‘... occasional “brushing up” or token maintenance does not establish a tacit dedication. Jackson v. Town of Logansport, 322 So.2d 281 (La.App. 2d Cir.1975) and authorities cited therein.’ Vaughn, supra, at p. 1198. See also Boynton v. Bertrand, 309 So.2d 769 (La.App. 3d Cir.1975); Rowe v. Harvey, 307 So.2d 103 (La.App. 1st Cir.1974), writ denied 310 So.2d 642; Chargois v. St. Julien, 280 So.2d 847 (La.App. 3d Cir.1973).
Although ‘[t]aeit dedication does not result where active opposition is directly communicated by the landowner to the governing body ... protests not made directly to the governing body or made after the road has been maintained by the governing body for three years do not prevent a tacit dedication under the statute.’ Vaughn, supra, at p. 1198, and numerous citations therein. The requisite maintenance for tacit dedication is not ascertained by comparison to the degree of maintenance of similar roads in a particular ward but rather an examination of the degree of maintenance conducted on the particular road in dispute. The standard of requisite maintenance is uniform, rather than ward by ward.”
Plaintiffs produced several witnesses at the hearing on the preliminary injunction. The evidence presented at trial between the plaintiff and defendant cannot be reconciled. Several of the plaintiffs’ witnesses testified that they worked for the Police Jury and that they either personally worked or graded the road and turnaround. Another employee, a motor grader operator, testified that he graded the road and turnaround. Another witness testified that he was familiar with the defendants’ property and that the road and turnaround would be worked and graded as needed. This witness further testified that gravel and shell were placed on the roads and shell on the turnarounds. This witness testified that he specifically recalls putting shell on the Charles Fontenot turnaround a year or year and a half before trial.
Defendants and other witnesses testified that the gravel road, turnaround, and driveway were built by the defendants. Charles Fontenot testified that he built the gravel road, driveway, and turnaround with the assistance of Frank Goos. Fontenot stated that at no time did he intend to give the road to the parish nor did they assist him in any way to construct the road, driveway, or turnaround. Fontenot stated that the Police Jury never helped to maintain the turnaround, but did place some gravel in the turnaround at one time. Fontenot testified that “[t]he Parish grades the road up to my turn-around. They’ll come in and use my turn — that road to turn-around. They’d come in a little ways with the blade and pick it up and they’ll go out. They been doing that for thirteen years.” From this testimony it can be determined that the defendant was making the point that when the motor grader would come to his property, it would only enter about thirty feet *960 onto the gravel road and then turn around and leave. On cross examination, Mr. Fon-tenot testified that the last time he put any material on the road was around four or five years ago. Fontenot further testified that the last time he bought gravel was about six years ago.
Mrs. Fontenot testified that she works in the home and never saw the road grader work the gravel road or the turn around. She testified that the road grader would go up the road only a short distance and turn around near a tree at the beginning of the road on the defendant’s property.
The only expert witness to testify for the defense was Vernon Meyer. In reasons for judgment, the trial judge reviewed the testimony of Meyer as follows:
“VERNON MYER: [sic] He testified that he is the Parish Engineer for Vernon Parish and is also a consulting engineer for various political subdivisions and has performed consulting work on many water work projects. He has had experience in the design and construction of roads. The court accepted Mr. Myer [sic] as an expert civil engineer and as an expert in road maintenance. He testified that he visited the Fontenot property on November 20, 1985, and obtained road samples and took pictures. The samples were introduced in evidence as D-5, 6 and 7. The pictures of the turnaround were introduced in evidence as D-8A through G. D-5 was a sample of the gravel taken from the public road east of defendants’ property line; D-6 was a sample of the gravel taken from the gravel road west of defendants’ property line; and D-7 was a sample of shell mixed with some gravel which was taken from the turnaround in front of defendants’ house. Based on his physical examination of the property it was his opinion that the gravel road and turnaround had never been maintained by a road grader such as one operated by the Police Jury. As to the turnaround he came to this conclusion because the driveway surface in the turnaround was in the exact same condition as the driveway which went along the west side of the house; the turnaround surface did not have a crown, but rather a dip which evidences work by a small blade rather than a motor grader blade; the fact that the turnaround was not wide enough for a motor grader to turn around and that there is a brick walkway in front of defendants’ door to his house, and if a motor grader had worked this there would have been evidence of scraping or destruction of the bricks by the blade of the motor grader. As to the gravel road he came to his conclusion because he evidenced definite signs of grader activity for only about 30 feet into defendants’ property from which point there was evidence that the blade had been lifted. On cross-examination he admitted that he could not say a motor grader did not grade the road between 1975 and 1980 since he only viewed the property in 1985. When showed the pictures introduced in evidence by plaintiffs as P-1 taken on May 9, 1985, he admitted that they did show evidence that the road on defendants’ property had been worked by a motor grader and that the picture of the road going into the turnaround showed little or no difference in the material on the road.”
After reviewing the testimony of Vernon Meyer, the trial court commented on the photographic evidence as follows:
“An important piece of evidence which was of great benefit to the court in reaching a decision in this case is the pictures introduced in evidence by plaintiffs as P-1, in globo. These pictures were taken on May 9, 1985 and clearly show the condition and surface of the gravel road on defendants’ property, as well as that part of the gravel road going into the turnaround. These pictures certainly evidence work by a motor grader and evidence that gravel had been put on the road. They also evidence the fact that there was no difference in the maintenance of the gravel road on defendants’ property in that part of the gravel road leading into the turnaround as contrasted to that part of the public road leading up to the defendants’ property line. Defendant Charles Fontenot testi *961 fied that the last time he purchased any gravel for the road was six years ago. Someone other than Mr. Fontenot certainly put gravel on the road within the last six years as clearly evidenced by the pictures.
The Police Jury has not done any work on the road since at least October, 1984 when Mr. Fontenot prohibited any further use of the road by the school bus. The pictures introduced in evidence as D-8, in globo were taken on November 20, 1985, almost a year later and some five months after the pictures of plaintiff were taken on May 9, 1985. The condition of the road on November 20, 1985 has certainly deteriorated showing little or no maintenance by anyone during this period of time.”
In light of the photographs, the trial court evaluated the salient witnesses:
“Defendant Charles Fontenot admitted that in 1973 the Police Jury put some gravel in the potholes on the turnaround and on one other occasion the motor grader operator attempted to grade the turnaround. However, except for these two occasions, the Police Jury did no further maintenance on the road and turnaround. That only he and his son maintained the road and turnaround which took about six hours a month. That he only bought gravel and shell four times since the road and turnaround were built in 1972, over a period of twelve years.' He testified that the last time he purchased any shell was four or five years ago and the last time he purchased any gravel was six years ago. The pictures of May 9, 1985 clearly refute his testimony and show that gravel was certainly put on the road within the last six years and tends to corroborate the testimony of the Police Jury employees as to the maintenance of the road and turnaround.
Defendants argue that plaintiffs have failed to refute any of the physical evidence that demonstrated that the turnaround could not have been maintained by a road grader which was shown by the pictures taken by their expert, Mr. Vernon Myer; [sic] his testimony that the surface was ‘dipped’ not ‘crowned’ indicating it had not been maintained by a grader; and the testimony of defendants and their witnesses who testified that the road was built and maintained by the Fontenots and not the Police Jury. Mr. Myer examined the property on November 20, 1985, and we are talking about maintenance of the road and turnaround over a twelve year period of time — from 1972 to 1984. He admitted on cross-examination that he could not say from his examination in 1985 that a motor grader did not grade the road between 1975 and 1980. Also, after being shown plaintiff’s pictures taken in May of 1985 he also admitted that they showed evidence that a motor grader did work the road and there was little or no difference in the maintenance as shown on the road as compared to the road leading into the turnaround. Moreover, there was a vast different [sic] in the appearance of the road and turnaround on the date of his examination as compared to the condition of the road and turnaround even as it existed as shown in the May, 1985 pictures which was six months after the school bus was prohibited from using the road and turnaround. For these reasons, the court cannot give Mr. Myer’s [sic] testimony much weight in determining whether or not the Police Jury has maintained the road and turnaround for three years during the period 1972 to 1984. The court must also give little weight to the testimony of defendants and their witnesses to the effect that during the twelve year period of time the Fontenots were the only ones who maintained the road and turnaround since plaintiff’s pictures of May, 1985, clearly show evidence that gravel was recently placed on the road and road leading into the turnaround which contradicts Mr. Fontenot’s testimony that the last time he purchased gravel was six years ago.
The evidence in the record is uncontra-dicted that the Fontenot turnaround was one of twelve school bus turnarounds in the Topsy Area which were maintained *962 by the Police Jury. Mr. Dugas, the Parish Road Supervisor, testified that all turnarounds were treated the same as did Police Jury employee, Floyd Sheridan, that is to say, they were worked if necessary and shell and gravel were added if needed. The court cannot believe that the Charles Fontenot turnaround, which was one of the twelve, would have been treated any differently. The evidence did indicate that the Charles Fonte-not turnaround was one of the better turnarounds which did not need as much maintenance as some of the others, but this does not take away from the fact that this turnaround was worked and material added when needed during the twelve year period of time in question. This is sufficient under the jurisprudence to amount to a tacit dedication as the operations of the Police Jury amounted to more than ‘brushing up’ or token maintenance.”
As expected, the testimony and evidence of the plaintiffs is contradicted by that of the defendants. The trial judge, as evidenced by his well thought out reasons for judgment, was very attentive to all of the testimony received at trial. A trial court is in the best position to make credibility determinations, and findings of fact based upon reasonable evaluations of credibility will not be disturbed on review unless they are clearly wrong. Guilbeau v. Roger, 443 So.2d 773 (La.App. 3d Cir.1983), writ denied, 446 So.2d 1224 (La.1984); Vascocu v. Singletary, 434 So.2d 597 (La.App. 3d Cir.1983). Consequently, where there is conflicting testimony, reasonable evaluations of credibility and reasonable inferences of fact by the trial court will not be disturbed by us even though we may feel that our own evaluations and inferences are as reasonable. Ouachita Parish Police Jury v. Wright, 446 So.2d 835 (La.App. 2d Cir.1984).
In reviewing the evidence, the record reveals that the trial judge made a well reasoned judgment regarding whether the gravel road, driveway, and turnaround had been maintained for the three years necessary for tacit dedication under LSA-R.S. 48:491. Even with numerous witnesses testifying for the defense that no motor grader maintained the gravel road, driveway and turnaround, there is ample evidence to support the trial court’s conclusion of sufficient maintenance. The trial judge had to decide whether sufficient maintenance had been performed for a period of three years from 1972 until 1984. The trial judge was particularly impressed by photographs introduced by the plaintiffs which show the road, driveway, and turnaround with very similar characteristics with regards to material and maintenance. The trial judge also obviously found the employees of the Police Jury more credible then the defendants’ witnesses when questioned regarding maintenance of the disputed roads. After a thorough review of the record, we do not find that the trial judge abused his discretion in his assessment of credibility and reasonable inferences of fact.
For the above and foregoing reasons, the judgment of the trial court is affirmed at appellants’ cost.
AFFIRMED.